## SCHAER VS. GLISTON.

In order to make an improvement on the lands of the state available, there must have been no prior improvement thereupon.

It does not belong to the plaintiff to object to the smallness of defendant's improvement when his own does not largely partake of the qualities of a substantial improvement.

When men fully acquainted with the qualities of objects for which they search, and with the ground where the search is made, do not find them, their testimony is not subject to the suspicion that attaches to negative testimony concerning facts to which their attention has not been directed.

To disturb a legal title acquired under our swamp land laws, the plaintiff must show a prior right and a superior equity. (*McIvor vs. Williams*, 23 *Ark.*; *Wright vs. Green, ib.*)

The plaintiff must recover on the strength of his own case, and not on the weakness of that of the defendant.

If the adverse claims of persons having improvements on the same land were not known to each other, the success of one, whether the most or the least deserving, did not clothe it with a trust for the benefit of the losing claim. (*Paty vs. Harrel*, 23 *Ark.*)

Where the equity is doubtful the legal title must prevail. (*Paty vs. Harrell, ubi sup.; Woodruff vs. Core*, 23 *Ark.*)

### *Appeal from Pulaski Chancery Court.*

Hon. U. M. ROSE, Chancellor.

JORDAN, and WILLIAMS & MARTIN, for appellant.

Two points are submitted to the consideration of the court for the reversal of the decree herein:

1st. That the improvement upon which appellee bases his right of pre-emtion was not on the quarter section in controversy.

2d. The accrual of the right of appellant to a pre-emption on the land, is prior in date, and therefore paramount to that of appellee. And no fraud, dishonesty or unfairness being shown on the part of Schaer in selecting the land, making his improve-

ment and obtaining his certificate of purchase, he should not be disturbed in his legal title to the land.

S. H. HEMPSTEAD and J. T. TRIGG, for the appellee, contended that the evidence clearly shows that the improvement of Woodard, from whom appellee purchased, was prior in date to the improvement made by appellant: that the fact that the improvement was not seen by the witnesses of the appellant is not proof of its non-existence ; that the improvement of Gliston was a *bona fide*, substantial one—he living on, and cultivating the land; whereas that of appellant could not properly be called an improvement, and should not have been considered as such.

Mr. Justice FAIRCHILD delivered the opinion of the court.

In the spring of 1857, Schaer attempted to make an improvement upon the north-west quarter of section twenty-seven, in township two south, of range ten west, but was afterwards told by Hardy, a surveyor, and who had selected the land for the state, as part of the swamp land grant, that his improvement was not on this quarter section. Hardy was then employed by Schaer to show the land, and to direct where an improvement should be made, and in August, 1857, he, with three other persons, proceeded to the work of running out the land and making the improvement. In tracing the lines, Hardy was the surveyor, his son and another person were the chain-bearers, and Schaer's father was present representing the interest of the son. The lines were ascertained by aid of the compass and chain ; but to make the intended improvement available as a pre-emption right, there must have been no prior improvement upon the land. To ascertain this, and also to see the quality of the land, the four persons engaged for Schaer made what Hardy calls a pretty thorough examination of the land, and could not find upon it any improvement.

The claim of Gliston is also supported by the testimony of two witnesses, who prove that, in November, 1857, he bought an improvement which had been made upon the same quarter section

before August, 1857, when Schear's improvement was made. These witnesses, Hester and McCall, both testify that the improvement which Gliston bought of Woodard, and which he afterwards much extended, is on the piece of land mentioned; and they state this from actual knowledge of the lines, from having been often upon the land, and from being familiar with the region of country where the land lies. Woodard's improvement made in the latter part of 1856, consisted of between one and two acres of deadened timber, with some saplings cut, as shown by Hester— as testified to by McCall, of some acre and a-half or two acres deadened. This being the improvement which is claimed to be prior to that of Schaer, is the one taken into consideration by us, passing by the subsequent and enlarged and actual improvements that were made in the fall of 1857, and in the succeeding winter by Woodard and by Gliston. The particular point to which our attention is directed, being, which was the first improvement upon the land in controversy, sufficient to uphold a pre-emption right.

The testimony adduced on the part of Gliston when taken by itself, is abundantly sufficient to show that an improvement was made, or begun, by Woodard, on the piece of land in question in the latter part of 1856, if an acre or two acres of deadened timber be such improvement. And whatever might be our opinion upon this, it does not belong to Schaer to object to the sufficiency of Woodard's improvement, when his own does not largely partake of the qualities of a substantial improvement.

But although Gliston's case is fully made out by his own witnesses, that of Schaer is also well established in relation to there being no improvement on the land in August, 1857, that could be discovered by the four men employed by him to ascertain this particular fact. For it was known to Hardy that it was necessary not only that the improvement should be upon the desired land, but that there should be no other improvement thereon, as appears by his deposition. It is also evident that the improvement proposed to be made for Schaer, was not intended to conflict with any

other; that is, in the words of Hardy, if any improvement had been found on the quarter section, none would have been made on it for Schaer. We cannot see how four men, intent upon finding an improvement upon the land just surveyed by them, on going all over the land, in open woods, could have overlooked such an improvement as Woodward's is shown to have been by his witnesses, it being equal, in amount of labor, to that by which they proposed to secure the land for Schaer, and equal to another made by Hardy which answered its purpose in enabling him to secure the land. When men fully acquainted with the usual qualities of objects for which they search, and with the ground where the search is made, do not find the improvements they are looking for, their testimony is not subject to the suspicion that attaches to negative testimony concerning facts to which the attention may not have been directed, or which may escape notice in the multitude of distracting incidents. Such testimony, confronted by affirmative testimony of the existence of facts that are the subject of inquiry, is far different from the testimony of the two Hardys in this case. Notwithstanding the positiveness with which Hester and McCall depose that Woodard's improvement was on the north-west quarter of section twenty-seven, in township two south of range ten west, we can conceive of their being mistaken in the locality, as well as we could conclude that Woodard's improvement eluded the search of the two Hardys, of Brown and of Schaer, the father of the appellant. Or, observing the different estimates of the amount of the same improvement made by unimpeached witnesses upon opposing sides of a case, as is shown by what is said about Schaer's improvement, we might infer that Woodard's improvement, if upon the land mentioned, would be found to be less than set forth by Hester and McCall, and so not found in August, 1857, by Schaer's improvement hunters. In whichever point of view the case is regarded, or in any way that we can look at it, it is painfully embarrassed by conflicting testimony.

We cannot reconcile the testimony by holding that the Hardys

are mistaken in their identification of the land. For, conceding to Hester and McCall, the advantage of long acquaintance with the land and a habit of tracing lines, their testimony cannot be stronger, nor, we think, as strong to fix the location of the land as that of the two Hardys. George W. Hardy had selected the land for the state, he surveyed its exterior and interior lines, and he had every inducement, in consideration of the former mistake of the chain-carriers, to run out the land for Schaer with exactness. James Hardy, also, assisted his father in surveying the land when it was selected as swamp land, looking at it with a view to its appropriation by himself: he had also traced the lines when helping Brodie to find his lands, so that with the survey made in August, 1857, he had participated in three surveys of the land.

And even if the testimony should be reconciled by supposing that Woodard's improvement was on the land in August, 1857, if it could not be found by such search as was made over the land for Schaer, the case would clearly fall within the principle of the cases of *McIvor vs. Williams*, and *Wright vs. Green*, decided at the term of this court, held in December, 1862; that principle being, that to disturb a legal title acquired under our swamp land laws, the plaintiff must show a prior right and a superior equity. And this is only an application of the maxim recognized in all legal proceedings, that a plaintiff must recover upon the strength of his own case, not upon the weakness of that of defendant.

Gliston's purchase of Woodard's improvement and ample extension of it by his own labor, occurring after the improvement of Schaer was made, which was converted into a pre-emption right by being so regarded by the state land agent, and which has been merged into the legal title, were subsequent claims, and gave no strength to the improvement which Woodard made before August, 1857, and which might be existing at that time.

The evidence also plainly shows that Schaer did not intend to defraud Gliston or any one, as if there had been any improvement found on the land, it would not have been subjected to any claim by Schaer, whence the claim of Gliston could not be con-

sidered as an equitable right. If the two claims were not known to these respective claimants, they were simply statutory claims; and the success of one, whether the most or the least deserving, did not clothe it with a trust for the benefit of the losing claim. *Paty vs. Harrell, Dec.* 7, 1862. Nor can Gliston assert that the affidavit of Schaer before the land agent was so inconsistent with his improvement, then become substantial, as to make Schaer's claim fraudulent any more than Schaer can retort the same charge upon Gliston. *I b.*

Any possible effort which could be used to make the testimony agree, would result with us, as it did with the chancellor, in a hesitating opinion; yet, the effect of it in this court, unlike its influence with the chancellor in this case, is held insufficient to overcome the better condition of the defendant in a doubtful case, or to divest a title fairly obtained and with the sanction of our system of swamp land laws. *Paty vs. Harrell,* and *Woodruff vs. Core,* 23 *Ark.,* 346.

We think the decree of the court below should have been for the defendant: we reverse it, and decree here a dismissal of the plaintiff's bill.